[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**September 9, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 05-10487
Non-Argument Calendar

D.C. Docket No. 04-00091-CR-F-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOBBY JOE HENDERSON,

Defendant-Appellant.

Appeal from the United States District Court for the
Middle District of Alabama

**(September 9, 2005)**

Before BIRCH, HULL and WILSON, Circuit Judges.

PER CURIAM:

Bobby Joe Henderson appeals his conviction for possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) because the district court denied his motion to suppress evidence seized from his residence during a July 2003 search. We AFFIRM.

## I. BACKGROUND

Henderson was indicted by a federal grand jury for possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Henderson previously had been convicted of conspiracy to possess with intent to distribute methamphetamine in May 1997. For that offense, he received a sentence of forty-seven months of imprisonment, and he was released on 13 August 1999 to begin serving a four-year term of supervised release. In August 2002, Henderson was arrested for driving under the influence of alcohol ("DUI"), and he was sentenced for that offense in September 2002.

The record includes other documents regarding Henderson's supervised release from imprisonment for his 1997 conviction. First, Henderson's original conditions of supervised release, which he signed on 16 August 1999 stated that "[t]he defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer." R1-22, attached Conditions of Supervised

2

Release at unnumbered 2.  Henderson's conditions were modified as a result of his 2002 DUI conviction.  Id., attached Request for Modifying the Conditions or Term of Supervision with Consent of the Offender.  The modified conditions state the following:

> The defendant shall participate in the Home Confinement Program, with electronic monitoring, for a period of three (3) months, to begin at a time designated by the probation officer.
>    . . . .
> [The defendant] shall submit to a search of [his] person, residence, office, or vehicle pursuant to the search policy of this Court.

Id.  A formal request to modify Henderson's supervised release, filed with the district court in August 2002, showed that Henderson had agreed to these modifications of the conditions of his supervised release as a result of his 2002 DUI conviction.  Id.

In this case, Henderson moved to suppress physical evidence obtained pursuant to a search of his residence and argued that the search occurred after the expiration of his home confinement related to his previous conviction.  Therefore, he contended that a search provision in the modified conditions of supervised release was no longer in effect.   Henderson also argued that the probation officer lacked reasonable suspicion to support the search and that the search was not conducted at a reasonable time and in a reasonable manner, as required by the

3

search provision. Finally, Henderson argued that the Probation Office acted as a "stalking horse" for outside law enforcement by conducting the search. R1-16 at 6-7.

A magistrate judge conducted a suppression hearing during which two officers testified.[1] Brad Brockett, a United States Probation Officer, identified Henderson and testified that he was Henderson's supervisory probation officer. On 23 July 2003, at approximately 5:15 a.m., Officer Brockett conducted a search of Henderson's residence. While Officer Brockett was conducting the search, he discovered that Henderson had been hiding in a thicket in front of the residence.

Officer Brockett conducted the search pursuant to a "supervised release warrant" for Henderson's arrest. 1Supp. R1 at 21. He obtained the warrant after several failed attempts to get Henderson to report to the Probation Office. After Henderson was arrested, probation officers conducted a search of Henderson's residence; the search revealed methamphetamine and items used for manufacturing methamphetamine. Officer Brockett testified that he did not have a search warrant, but a condition of Henderson's supervised release allowed officers to conduct the search. Id. at 25. The search provision allowed officers to search

---

[1] The two officers who testified were Deputy Sheriff Linda Clemmons and Brad Brockett of the Probation Office. Clemmons testified for the government. Her testimony related only to Henderson's post-arrest statements, and, therefore, is not relevant to this appeal.

Henderson's residence, automobile, and place of employment at any time if officers had a reasonable suspicion that Henderson possessed contraband.

Officer Brockett also testified regarding his reasonable suspicion. In February 2003, Henderson had tested positive for methamphetamine and amphetamine. Id. at 26. Officer Brockett received the test results in March 2003, and he attempted to contact Henderson on several occasions. Officer Brockett learned from a local law enforcement officer that "a lot of traffic [was] coming in and out of Henderson's [residence]." Id. at 30. Additionally, Henderson failed to report to the Probation Office after Officer Brockett attempted to contact him on several occasions. Specifically, Officer Brockett sent Henderson a certified letter on 20 June 2003; the letter was returned undelivered after three delivery attempts. Id. at 31.

On cross-examination, Officer Brockett testified that he spoke with his supervisor in March 2003, and at that time, Officer Brockett and his supervisor agreed to attempt to bring Henderson into the Probation Office before conducting a search. The government stipulated that the search was not conducted incident to Henderson's arrest; instead, it was based upon the probation officers' reasonable suspicion of Henderson's criminal activity. Officer Brockett also testified that, while he was questioning Henderson on 23 July 2003, Henderson's "eyes were

glassy" and he appeared to be under the influence of drugs. Id. at 41. Henderson admitted that he had used drugs and that drugs possibly were located on the premises. Id. at 42.

Officer Brockett further testified that a local law enforcement officer had conducted surveillance on Henderson in January 2003, and that the officer had noted several vehicles leaving Henderson's residence. In February 2003, local law enforcement officers had told Officer Brockett that "they had heard . . . that there were illegal drug activities occurring at [Henderson's] house." Id. at 45. Because of the search condition, Officer Brockett did not believe that he needed the court's permission to conduct a search; the government stipulated that it did not consult the court before the search was conducted. Officer Brockett also testified that, on 19 March 2003, he visited Henderson's residence and noted two vehicles with Florida license plates. Id. at 46-47. Because Henderson's residence was close to the Florida border, Officer Brockett did not find the presence of the vehicles unusual. Officer Brockett knew that Henderson operated a business from his residence and that he had at least one employee. Officer Brockett attempted to locate Henderson at the residence at all times of the day, and not just during business hours, when Henderson was not likely to be home.

Officer Brockett testified that he visited Henderson's residence in June 2003 and Henderson was not present.  Id. at 51-52.  Officer Brockett noted some suspicious items, including a padlock on Henderson's bedroom door, a police scanner, and a lockbox in Henderson's bedroom.[2]  Id. at 52-54, 56.  Officer Brockett encountered an unidentified individual at the residence, and the individual quickly left when Officer Brockett arrived.  Finally, Officer Brockett noted a suspicious substance that was later identified as an item used in the manufacturing of methamphetamine.

On 3 July 2003, Officer Brockett received a National Crime Information Center ("NCIC") advisory from Walton County Deputy Sheriff Tim Hartidge.  The NCIC advisory stated that Deputy Hartidge had "not[ed] several vehicles going toward Walton County, [and] a lot of traffic going in and out of Mr. Henderson's residence."  Id. at 57.  Officer Brockett acknowledged that it would not be unusual for the certified letter to be returned undelivered because Henderson was not at his residence during business hours when the postal worker attempted to deliver it.

The government introduced several exhibits during the suppression hearing.  The Probation Office's search policy states:

---

[2] Although there was a padlock on the bedroom door, the door was open during Officer Brockett's visit.

7

> The defendant shall submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation . . . .

1 Supp. Exh. Folder 1, Defendant's Exh. 2A. The Probation Office's search policy specifically states that "[i]t will not suffice for an officer to seek approval for a search based on a hunch or unsubstantiated rumors . . . ." Id., Defendant's Exh. 2C at 11. The document also notes that the district court had adopted the Probation Office's search policy. The search policy states that, "[w]hen a special search condition is not in effect, a probation officer may obtain a search warrant to conduct a search of an offender's property. . . . As a general rule, searches should be made between 6:00 a.m. and 10:00 p.m." Id., Defendant's Exh. 2C at 11, 13.

In his recommendation, the magistrate judge advised the denial of Henderson's motion to suppress the physical evidence. As to Henderson's argument regarding the expiration of the search condition, the magistrate judge found that, based upon the plain meaning of the modified search condition, the three-month limitation on the home confinement provision did not apply to the search provision. Regarding Henderson's argument that the Probation Office violated the search policy of the court, the magistrate judge found that the

probation officer had reasonable suspicion to conduct the search based upon Henderson's positive drug test, his failure to report to Officer Brockett, and suspicious items observed in Henderson's residence during a June 2003 home visit by Officer Brockett. The magistrate judge noted that Henderson failed to explain why he could not go to the post office in person to retrieve the certified letter that was eventually returned to Officer Brockett undelivered. The magistrate judge also found that the search was conducted at a reasonable time and in a reasonable manner because Officer Brockett had unsuccessfully attempted to locate Henderson at his residence on several previous occasions, and Henderson was likely to be home during the early morning search. The magistrate judge determined that Henderson's argument that probation officers were a "stalking horse" for local law enforcement officers lacked merit because the "stalking horse" argument applies only to warrantless investigative searches, and this search was supported by reasonable suspicion. R1-31 at 17.

Henderson objected to the magistrate judge's recommendation. The district court overruled Henderson's objections, adopted the magistrate judge's recommendation, and denied Henderson's motion to suppress. Henderson signed a plea agreement in which he agreed to plead guilty to the count contained in the indictment, but he reserved the right to appeal the denial of his motion to suppress.

Pursuant to the magistrate judge's recommendation, the district court accepted Henderson's guilty plea. Henderson was sentenced to sixty months of imprisonment and five years of supervised release.

## II. DISCUSSION

On appeal, Henderson argues that the district court erred by denying his motion to suppress evidence seized from his residence during the July 2003 search. He asserts that the Probation Office violated his Fourth Amendment rights by conducting a warrantless search of his residence that was not supported by reasonable suspicion and was not conducted within the parameters of the policy of the Probation Office. Henderson argues that the evidence that the government relied upon either did not establish reasonable suspicion or was stale. Regarding the Probation Office's compliance with its search procedures, Henderson argues that the 5:15 a.m. search was unreasonable in light of the procedure requiring the search to be conducted between 6:00 a.m. and 10:00 p.m.

We review for clear error a district court's findings of fact in ruling on a motion to suppress, and its application of law to the facts de novo. United States v. Novaton, 271 F.3d 968, 986 (11th Cir. 2001). The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S.

10

Const. amend. IV. It also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Id.

There are exceptions to the Fourth Amendment's warrant and probable-cause provisions, including an exception for "special needs." See Griffin v. Wisconsin, 483 U.S. 868, 875, 107 S.Ct. 3164, 3169 (1987). The Supreme Court has held that supervision of people on supervised release "is a 'special need' . . . permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." Id. at 875, 107 S.Ct. at 3169. In Griffin, the Supreme Court upheld a warrantless search of a probationer's home that was based upon information from a detective that "there were or might be guns in Griffin's apartment." Id. at 871, 107 S.Ct. at 3167.

The Supreme Court also has held that people on supervised release have a "significantly diminished . . . expectation of privacy." United States v. Knights, 534 U.S. 112, 120, 122 S.Ct. 587, 592 (2001). In Knights, the Court also held that, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Id. at 121, 122 S.Ct. at 593.

11

Reasonable suspicion "is considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is "'a fair probability that contraband or evidence of a crime will be found.'" United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585 (1989) (citation omitted). The Supreme Court has clarified the meaning of reasonable suspicion in the context of supervised release in the form of probation:

> In such circumstances it is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of supporting data, and upon the same degree of certainty of violation, as is required in other contexts. In some cases – especially those involving drugs or illegal weapons – the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.

Griffin, 483 U.S. at 879, 107 S.Ct. at 3171.

The evidence at the suppression hearing established several factors that supported Officer Brockett's reasonable suspicion. First, Officer Brockett had received reports from local law enforcement officers that Henderson might be involved in drug activities. Second, after several attempts to locate Henderson, Officer Brockett sent Henderson a letter via certified mail that was returned

12

undelivered. The magistrate judge noted that Henderson failed to explain why he could not have gone to the local post office to retrieve the letter. Third, during a June 2003 home visit, Officer Brockett observed several suspicious items, including a padlock on Henderson's bedroom door, a lockbox in Henderson's bedroom, and a police scanner. While these items arguably did not violate any laws and were justified in light of the presence of employees in Henderson's home, the items contributed to Officer Brockett's reasonable suspicion. Fourth, officers observed an unusual amount of traffic around Henderson's residence. Fifth, Henderson tested positive for methamphetamine in February 2003, which violated the terms of his supervised release, and he failed to respond to Officer Brockett's attempts to contact him. Sixth, during the July 2003 search, Officer Brockett observed that Henderson appeared to be under the influence of drugs. All of these factors are sufficient to establish reasonable suspicion to justify the search, especially in light of Henderson's diminished privacy rights. See Knights, 534 U.S. at 120, 122 S.Ct. at 592; Griffin, 483 U.S. at 879, 107 S.Ct. at 3171.

Regarding the reasonableness of the time of the search, which occurred at 5:15 a.m., we conclude that the search was conducted at a reasonable time in view of the facts of this case. A probation officer testified that he had been unsuccessful in locating Henderson on several occasions. The officer testified that

13

he had attempted to locate Henderson at his residence at various times during business hours and that Henderson was not likely to be home during those hours. Thus, it was reasonable to conduct the search early in the morning, when officers were more likely to find Henderson at home.

### III. CONCLUSION

Henderson has challenged his conviction based on the denial of his motion to suppress the evidence discovered during an early morning search of his house. As we have explained, the Probation Office had reasonable suspicion to conduct the search at the time that it was executed. Accordingly, Henderson's conviction is **AFFIRMED.**